IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| TODD ANDREW, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | CIVIL No: 5:15-CV-307 |
| HOMER BRYSON, *et al.*, | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. § 1983 |
| Defendants | : | |

## REPORT & RECOMMENDATION

Plaintiff Todd Andrew, a state inmate currently confined at Augusta State Medical Prison in Grovetown, Georgia, filed a *pro se* civil rights complaint in this Court seeking relief under 42 U.S.C. § 1983. Doc 1. Because Plaintiff did not exhaust his available administrative remedies before he filed his complaint, it is **RECOMMENDED** that the Defendants' Motions (Docs. 14, 28) be **GRANTED**, that Plaintiff's Motion to Dismiss (Doc. 14) be **DENIED as MOOT**, and that Plaintiff's claims be **DISMISSED** as to Defendants Kirk, Utzie, and Brown.

## FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

This action arises out of an inmate-on-inmate attack occurring at the Georgia Diagnostic and Classification Prison (GDCP) in Jackson, Georgia. Plaintiff alleges that, on July 7, 2014, Officers Kirk and Dumas knowingly and intentionally allowed another inmate to beat Plaintiff with a broom handle. Plaintiff alleges that Officer Kirk was friends with (and from the same town as) Inmate James Cantrell and told Cantrell that he had been transferred to a less desirable dorm because Plaintiff complained about him. Officers Kirk and Dumas then violated prison regulations which required that they escort Plaintiff and other inmates to the dining hall for their medical

snack. They instead left Plaintiff unprotected where they believed that he would be attacked by Cantrell. Plaintiff, who was confined to a wheel chair, was severely beaten by Cantrell with a broom that had been left in the dining hall. Plaintiff suffered multiple broken bones.

Plaintiff contends that Warden Chatman, Deputy Warden Utzie, and Lieutenant Brown were responsible for conducting inspections to make sure that tools and supplies were secured when not in use. Chatman, Utzie and Brown, however, had a long-time, known practice of not conducting tool control inspections. Thus, despite Plaintiff's complaints to Brown about threats made by Cantrell, the broom in the dining hall was not secured when Cantrell used it to attack and injure Plaintiff.

Plaintiff requested that criminal charges be brought against Cantrell, but Utzie failed to file any charges and "lied" to Plaintiff, telling him that he had. Cantrell was, however, given a disciplinary report and thereafter transferred to the prison's "Tier Program" for violent inmates. Officer Dumas was terminated after the incident, and Kirk was suspended without pay.

Upon recommendation, Plaintiff's claims against Homer Bryson were dismissed, and Plaintiff was allowed to go forward with his claims against Defendants Dumas, Kirk, Chatman, Utzie, and Brown. Docs. 7, 36. Plaintiff then filed a Motion to Dismiss his claims against Defendants Bryson and Utzie (Doc. 14), and Defendants Chatman and Utzie filed their Motion to Dismiss (Doc. 20). Defendant Brown filed his Motion to Dismiss on February 8, 2016, incorporating the same arguments and defenses as Defendants Chatman and Utzie. Doc. 28. A waiver of service was later issued for Defendant Dumas, which has yet to be returned. This recommendation addresses only the Motions of Defendants Kirk, Utzie, and Brown.

**PLAINTIFF'S MOTION TO DISMISS (Doc. 14)**

On December 10, 2015, before Defendant Utzie filed his joint Motion to Dismiss, Plaintiff filed a Motion to Dismiss his claims against Defendants Bryson and Utzie. Doc. 14. Plaintiff states that Defendant Bryson could not be held liable "for the actions of his subordinates" and asked that the Court dismiss his claims against Defendant Bryson. *Id.* at 1. Plaintiff also moves the Court to dismiss his claims against Defendant Utzie "based on his failure to file criminal charges against Cantrell after the attack." *Id.* Plaintiff indicates that he still wished to pursue his Eighth Amendment claims against the Defendants. *Id.* Upon review, Plaintiff's motion is actually a reiteration of the Recommendation to dismiss the same claims. Compare Doc. 7, p. 4-5 with Doc. 14, p. 1. When the Recommendation was adopted, Plaintiff's motion was rendered moot, as the above listed claims against Defendants Bryson and Utzie were dismissed. Therefore, it is **RECOMMENDED** that Plaintiff's Motion to Dismiss (Doc. 14) be **DENIED as MOOT**.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

A.  The Prison Litigation Reform Act

Before this Court may address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th

Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

Also important to this specific case, "when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Thus, even if Plaintiff

exhausted his administrative remedies after he filed his complaint, the Court cannot take action on those claims. See 42 U.S.C. § 1997e(a).

B.     Available Administrative Remedies

During the period relevant to this case, the Georgia Department of Corrections provided prisoners with a two-step grievance procedure. Doc. 21-3, pp. 1-17. At step one, a prisoner wishing to file a grievance is required to file no later than ten (10) calendar days from the date he knew or should have known of the facts underlying his grievance. *Id.* at 8. The procedure allows the Grievance Coordinator to waive this time limit "for good cause." *Id.* The Warden must respond within forty (40) days. *Id.* at 10. If this initial grievance is rejected, the prisoner is required to appeal within seven (7) calendar days. *Id.* at 12. If the time allowed for a response expires without a response, the Plaintiff may also file an appeal. *Id.*

The procedure also provides for the above-stated timelines to be waived by the grievance coordinator "for good cause." *Id.* at 8. Good cause is defined as: "A legitimate reason involving unusual circumstances that prevented the offender from timely filing a grievance or an appeal. Examples include: serious illness, being housed away from a facility covered by this procedure (such as being out on a court production order or for medical treatment)." *Id.* at 2. An inmate may file "a grievance about any condition, policy, procedure, or action or lack thereof that affects the offender personally." *Id.* at 6. However, disciplinary actions, including any punishment, fees, or assessments are determined to be "non-grievable." *Id.* The disciplinary appeal procedure is located in GDC SOP IIB02-0001. *Id.*

C.     Analysis

Applying the *Turner* analysis to the procedures outlined above, Plaintiff's complaint is entitled to dismissal at step one. Plaintiff indicated in his Amended Complaint that he filed a

5

grievance and fully exhausted his administrative remedies regarding his claims before filing his case. See Doc. 6, p. 33. Included in his amended complaint are several attached exhibits including four separate grievances, as well as several letters written to Warden Chatman, his own affidavit, and the affidavits of other inmates.

As a supporting exhibit, Plaintiff attached Grievance Number 177697, filed on July 23, 2014. Doc. 6, p. 22. In that grievance, Plaintiff complained that his property was stolen during a trip to the Emergency Room by officers at GDCP. *Id.* The Warden denied Plaintiff's grievance on August 30, 2014 as unsubstantiated. Doc. 6, p. 23. Plaintiff received the Warden's response on September 11, 2014. *Id.* Plaintiff timely appealed, but the Central Office denied his appeal on October 15, 2014, attaching as support Plaintiff's signed Personal Property Inventory, in which he had not indicated any missing property. Doc. 6, p. 24.

Plaintiff also included Grievance Number 182341, filed by Plaintiff on September 24, 2014. Doc. 6, p. 29. In that grievance, Plaintiff alleged that inmate Cantrell assaulted him with a broom on July 7, 2014, which resulted in bodily injury, and that inmate Cantrell should pay for Plaintiff's medical bills and co-pays. Doc. 6, p. 31. The Warden denied Plaintiff's grievance on October 6, 2014, because co-pay charges for health care are a non-grievable issue. Doc. 6, p. 30. Plaintiff filed a timely appeal on October 8, 2014, and the Central Office issued its response on November 19, 2014. Doc. 6, p. 31. Specifically, the response stated: "Policy notes that in order for Inmate Cantrell to pay your medical expenses he has to be written a disciplinary report and sanctioned with your medical charges. He was not given a sanction of restitution and therefore is not responsible for your medical bills or co-pays. This grievance is denied." *Id.* Plaintiff also included Grievance Numbers 186122 (Doc. 6, p. 32), 189959 (Doc. 6, p. 36), both of which complain of medical care he received at Augusta State Medical Prison, and are not directly related

to Plaintiff's claims in the instant case.

The evidence presented from Plaintiff does not show that he exhausted his administrative remedies as to any of his claims, against any Defendant. Instead, Plaintiff states that he was unable to file a timely grievance because he was "hospitalized on [July 7, 2014] for over ten days due to" a fracture. Doc. 30-1, p. 1. Plaintiff then states that he was transferred back to Jackson, where Gary Caldwell, then a Grievance Coordinator, told Plaintiff that he should get a letter regarding his discharge from medical first, then they would accept Plaintiff's grievance. Doc. 30-1, p. 2. Plaintiff states that he "was on a lot of pain meds at the time" and he "trusted the staff at GDCP when they said" they would accept his grievance and waive the time limit. Doc. 30-1, p. 2. Plaintiff also states that he filed some grievances in the past which were lost—including one on July 22, 2014, and one on July 23, 2014, regarding "medical and [his] property." Doc. 30-1, p. 3. In essence, Plaintiff complains that his administrative remedies were unavailable because he was hospitalized immediately following the attack, and thus should be excused from the exhaustion requirement, and that prison officials told him he could file an out-of-time grievance, but then failed to accept it.

The Eleventh Circuit recognized in *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008), "that other courts of appeals have concluded that administrative remedies are unavailable where prison officials do not respond to an inmate's grievances or prevent the filing of grievances." *Tilus v. Kelly*, 510 F. App'x 864, 866 (11th Cir. 2013) (citing *Bryant,* 530 F.3d at 1373 n. 6). The facts of the instant case are very similar to the facts presented in *Bryant* by Appellant Andrew Priester. Priester was an inmate at Rogers State Prison who was later transferred to Georgia State Prison. *Id.* The Eleventh Circuit summarized the underlying facts of the case in Plaintiff's appeal:

> In January 2004, Priester received a transfer from Rogers to Georgia State Prison ("GSP"). During a visit to the GSP infirmary, Priester reported his abuse at Rogers

7

> to a psychiatrist and a counselor. He also requested a form to file a grievance about the abuse. The psychiatrist and the counselor responded that his mental health problems had caused him to be delusional; and, as a result, they refused to give him a grievance form to report the beatings. Nothing suggests that Priester made some further attempt to file a grievance about the abuse. He later obtained and submitted a grievance form at GSP for an unrelated incident about lost property.

*Bryant*, 530 F.3d at 1371-72. Just as in Plaintiff's case, Priester was precluded from filing a grievance regarding his alleged physical abuse, even though the beatings were a grievable issue. Similarly, according to Plaintiff's complaint, Plaintiff was allegedly precluded from filing a grievance about his aggravated assault from James Cantrell, even though it was clearly a grievable issue, because he was in the hospital, and then the officials failed to accept an out-of-time grievance.[1]

The Court in *Bryant* further held that the above stated facts supported a finding of available administrative remedies because Plaintiff had "access" and the ability to file a grievance. See *Bryant,* 530 F.3d at 1378-79. The *Bryant* opinion placed some weight on the fact that Plaintiff failed to file an additional grievance by noting that "[Plaintiff] could have exhausted his administrative remedies by filing a grievance at GSP and then by showing good cause for its tardiness. But, he filed no grievance about the abuse." *Id.* at 1373 ("We recognize that a grievance filed after Priester's transfer to GSP would have been untimely. But the relevant grievance procedures provide inmates with the opportunity to request consideration of untimely grievances for good cause"). Attempting to file an out of time grievance has been encouraged in other Eleventh Circuit opinions as well. See also *Schlicher v. Florida Dep't of Corr.*, 399 F. App'x 538, 539 (11th Cir. 2010) ("When a prisoner alleges that he did not have timely access to the required grievance forms, he still fails to exhaust his administrative remedies if he does not request consideration of an untimely grievance.") (per curiam).

---

[1] As an aside, Plaintiff, like Priester, was also able later to file a grievance form at GDCP for an unrelated incident about lost property.

8

From Plaintiff's version of the facts, it is evident that Plaintiff was able to file grievances regarding the July 7, 2014 incident as early as July 23, 2014, and that his July 23 grievance was accepted as timely, appealed, and disposed of on the merits. See Doc. 6, pp. 22-24. It is also clear that Plaintiff's other grievance was not "lost" as Plaintiff later stated in his Motion for Discovery. Furthermore, Plaintiff's grievance filed on July 23, 2014, raised issues regarding his property, which he contends was stolen during his trip to the ER by officers at GDCP. *Id.* Plaintiff indicates in his own exhibits that he was able to file another grievance on September 24, 2014, raising additional complaints regarding the July 7, 2014, incident. Doc. 6, p. 29. In neither of those grievances did Plaintiff allege that any of the named Defendants was responsible for the attack by James Cantrell.

Plaintiff's version of the facts does not conflict with the weight of the evidence presented by the Defendants. In addition to their memorandums in support of the Motions to Dismiss, Defendants present: the Affidavit of Lesley Medlock, the Grievance Coordinator at GDCP (Doc. 21-2); Standard Operating Procedure IIB05-0001 (Doc. 21-3); Plaintiff's Grievance History (Doc. 21-4); the Administrative Record of Grievance Number 182341 (Doc. 21-5); the Administrative Record of Grievance Number 205233 (Doc. 21-6); and the Administrative Record of Grievance Number 205235 (Doc. 21-7).

Plaintiff's grievance history shows that Plaintiff filed thirteen grievances between the date of the attack and the filing of his complaint, and Plaintiff was able to appeal four of those grievances, while several more were dropped by Plaintiff. See Doc. 21-4, p. 1. As noted from Plaintiff's exhibits, Defendants' records show that on September 24, 2014, Plaintiff filed Grievance Number 182341, alleging that inmate Cantrell assaulted him with a broom on July 7, 2014, which resulted in bodily injury, and that inmate Cantrell should pay for Plaintiff's medical

9

bills and co-pays. Doc. 21-5, p. 6. Notably absent from the grievance is any allegation that GDCP staff members Kirk, Dumas, Chatham, Utzie, or Brown, were responsible for Cantrell attacking him. See Doc. 21-5, p. 6. The Warden denied Plaintiff's grievance on October 6, 2014, because co-pay charges for healthcare is a non-grievable issue. Doc. 21-5, p. 3. Plaintiff filed an appeal on October 8, 2014, and the Central Office issued its response on November 19, 2014. Doc. 21-5, p. 1. The response stated: "Policy notes that in order for Inmate Cantrell to pay your medical expenses he has to be written a disciplinary report and sanctioned with your medical charges. He was not given a sanction of restitution and therefore is not responsible for your medical bills or co-pays. This grievance is denied." *Id.*

More than one year later, on September 30, 2015, Plaintiff filed Grievance Number 205233, in which he alleged that Officer Kirk was responsible for "setting him up" to be assaulted by Inmate James Cantrell on July 7, 2014, and that Officer Kirk had not yet been removed from his position at GDCP. Doc. 21-6, p. 6. Plaintiff stated that Defendant Utzie told him that Officer Kirk would "never come back to this prison," and that Officer Kirk's presence gave him "mental anguish." *Id.* He further alleged in the grievance that the attack resulted in a three hour surgery and bodily injury for life. *Id.* On October 2, 2015, Grievance Number 205233 was denied by the Warden because it was filed out of time. *Id.* at 3. On October 6, 2015, inmate Andrew appealed the denial of Grievance Number 205233. *Id.* at 1-2. In his appeal, Plaintiff stated that he had given the staff a grievance on this matter "many times" since the middle of July of 2014, up until October, but that the staff "had procrastinated" in filing it. *Id.* On November 24, 2015, the Central Office denied inmate Andrew's appeal of Grievance Number 205233. Doc. 21-2, pp. 8-9. A copy of the appeal decision is not included in Defendants' exhibits.

Also on September 30, 2015, Plaintiff filed Grievance Number 205235, in which he

10

alleged that unnamed GDCP officials disregarded his constitutional rights by failing to "prosecute James Cantrell for the aggravated assault … on July 7, 2014." Doc. 21-7, p. 6. On October 2, 2015, Grievance 205235 was denied by the Warden for being untimely. Doc. 21-7, p. 4. On October 6, 2015, Plaintiff appealed the denial on October 5, 2015, Plaintiff again stated that he had given the staff a grievance on this matter "many times" from the middle of July of 2014, up until October, but that the staff "had procrastinated" in filing it. *Id* at 1-2. On November 24, 2015, the Central Office denied Plaintiff's appeal of Grievance Number 205235. Doc. 21-2, p. 9. A copy of the appeal decision is not included in Defendants' exhibits.

Ms. Medlock, the Grievance Coordinator, affirms that Plaintiff did not file any other grievance in which he alleged that his GDCP prison officials violated his constitutional rights in connection with the July 7, 2014 altercation with inmate Cantrell. See Doc. 21-2, p. 9.

Thus, Grievance Number 205233 is the only grievance Plaintiff filed and appealed to the Central Office in which he alleged that a GDCP official did not adequately protect him from inmate Cantrell on July 7, 2014. See Doc. 21-2, pp. 8-9; Doc. 21-7. However, Plaintiff alleged in that grievance that only Officer Kirk facilitated the attack by inmate Cantrell on July 7, 2014. See Doc. 21-7, p. 6. Plaintiff never raised an issue regarding Defendant Dumas's alleged role in the attack, nor did Plaintiff state that any member of the GDCP administration, including Defendant Utzie, was responsible for the July 7, 2014 attack by failing to ensure that the tools and supplies were secure. Compare Doc. 21-7, p. 6 to Doc. 1. Plaintiff only exhausted his administrative remedies as to his claim against Defendant Kirk.

Even then, Plaintiff did not exhaust his administrative remedies *before* he filed the instant Complaint on August 10, 2015. Doc. 1. Ms. Medlock affirms the Central Office did not deny inmate Andrew's appeal of Grievance Number 205233 until November 24, 2015, which was 106

days after he filed the instant complaint.

In light of the foregoing, Plaintiff's complaint must be dismissed for failure to exhaust his administrative remedies as he did not file a grievance regarding any constitutional violation suffered at the hands of GDCP officials, within ten days from date he knew or should have known of the facts underlying his grievance, or that he filed an out-of-time grievance "for good cause" before he filed his complaint. Plaintiff was clearly aware of the grievance procedure, had access to the required grievance forms, and even filed two grievances regarding the events of July 7, 2014, both of which were resolved at the Central Office level. Because the PLRA requires "proper exhaustion." *Woodford*, 548 U.S. at 90, 93–97, and because a Plaintiff "must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit," *Brown*, 212 F.3d at 1207 (emphasis added), Plaintiff did not successfully exhaust his administrative remedies as to Defendant Chatman, Kirk, or Utzie, and his complaint must be dismissed.

## CONCLUSION

Because Plaintiff failed to exhaust his available administrative remedies before he filed his complaint, it is **RECOMMENDED** that the Defendants' Motions (Docs. 14, 28) be **GRANTED**, that Plaintiff's Motion to Dismiss (Doc. 14) be **DENIED as MOOT**, and that Plaintiff's claims be **DISMISSED** as to Defendants Kirk, Utzie, and Brown. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to

challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

    **SO RECOMMENDED**, this 6th day of July, 2016.

                                                      s/ Charles H. Weigle
                                                      Charles H. Weigle
                                                      United States Magistrate Judge